# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 13-731V
## (Not to be published)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                \*

|  |  |
|---|---|
| MICHAEL DOLLOFF, | Filed:  November 23, 2015 |
| Petitioner, | |
| v. | Attorney's Fees and Costs;<br>Influenza ("Flu") Vaccine;<br>Guillain-Barrè Syndrome ("GBS") |
| SECRETARY OF HEALTH AND<br>HUMAN SERVICES, | |
| Respondent. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Ronald Homer*, Conway, Homer & Chin-Caplan, P.C., Boston, MA, for Petitioner.

*Gordon Shemin*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION AWARDING ATTORNEY'S FEES AND COSTS[1]

On September 25, 2013, Michael Dolloff filed a petition seeking compensation under the National Vaccine Injury Compensation Program.[2] Petitioner alleged that he developed Guillain-Barrè syndrome ["GBS"] as a result of receiving the influenza vaccine on October 20, 2010. The parties later stipulated to a damages award, and I issued a decision on December 29, 2014 (ECF No. 27) awarding damages that was reduced to a judgment on December 31, 2014 (ECF No. 29).

Thereafter Petitioner filed an application for attorney's fees and costs on May 1, 2015 (ECF

---

[1] Because this decision contains a reasoned explanation for my action in this case, it will be posted on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (Dec. 17, 2002 (current version at 44 U.S.C. § 3501 (2014)). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the inclusion of certain kinds of confidential information. To do so, Vaccine Rule 18(b) provides that each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the decision will be available to the public. *Id.*

[2] The National Vaccine Injury Compensation Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended, 42 U.S.C.A. § 300aa-10 – 34 (2012)) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act.

No. 32), which Respondent opposed at the end of May (ECF No. 35) ["Initial Opp."]. Petitioner filed a reply in support of his fees application on June 22, 2015 (ECF No. 22). Despite the fact (as is well-understood) that in the Vaccine Program prevailing petitioners are entitled to an award of attorney's fees and costs (*see* Section 15(e)), the fees application was bitterly disputed, with Respondent filing a 24-page opposition and Petitioner in turn filing a 60-page reply. This dispute did not occur in a vacuum, but reflected a broader dispute at the time embroiling the Department of Justice and the law firm of Conway, Homer & Chin-Caplan, PC [the "Homer Firm"] – counsel to Mr. Dolloff and many other Vaccine Program petitioners – regarding the proper hourly rate to pay Homer Firm attorneys generally.

While Petitioner's fees application was pending, Respondent was locked in a similar battle with the Homer Firm over attorney hourly rates in a different Vaccine Program case, *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293.[3] Before the present fees dispute was resolved, Special Master Gowen issued a decision setting hourly rates for several Homer Firm attorneys. *McCulloch*, No. 09-293, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *reconsid. den'd*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). That decision (which was not appealed by Respondent) engaged in an extensive analysis of (i) the prevailing rate for comparable legal work within the forum of Washington, D.C.; (ii) the prevailing rate for cases in the Vaccine Program; (iii) the experience of the attorney both generally and within the Vaccine Program more specifically; (iv) the quality of their work; and (v) their reputation in the legal community and the community at large.

Post-*McCulloch*, Mr. Dolloff filed an amended fees application based upon the Homer Firm attorney hourly rates determined in that case. Second Amended Application, dated October 14, 2015 ["Mot."]. The amended application requests a fees award of $24,624.30, plus attorney's costs in the sum of $6,404.77. I subsequently held a status conference in this matter on October 15, 2015, at which time I informed the parties that I found *McCulloch's* reasoning persuasive and that I intended to apply it to this case, but that I would permit the parties to respond briefly to the revised fee application.

I also asked the parties to address in their filings whether and/or to what extent any fees award should include time billed to the fees "battle." My review of the amended fees application revealed that the Homer Firm had billed 3.5 hours to the fees dispute in this case. But because that dispute had been fought on multiple fronts, with the same arguments copied from case to case, it seemed likely that counsel had been able to rely on the same arguments and legal reasoning throughout, diminishing the reasonableness of seeking reimbursement for hours devoted to the

---

[3] *McCulloch* involved an interim rather than final request, but after a favorable entitlement decision as a result of a hearing, and therefore the procedural circumstances of that case are not distinguishable for present purposes (since in this case as well entitlement to a damages award was found to be appropriate).

same tasks in this case.

Respondent filed a pleading responding to the present fees application on October 23, 2015 (ECF No. 40) ["Resp."]. In it, she incorporated by reference the objections she raised in her earlier filing responding to the first version of the fees application, but deferred to my discretion the resolution of the present fees application. She also indicated that she did not accept *McCulloch*'s findings but did not intend to further litigate the matters it had addressed. Resp. at 2. With respect to time devoted herein to the fees dispute, Respondent urged me to "reduce any "redundant, or otherwise unnecessary" hours." *Id.* at 3 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

Petitioner filed a reply on October 30, 2015 (ECF No. 41) ["Reply"]. He argues in it that the nature of the fees disputes were not identical from case to case, requiring slightly different analyses, and also that the lengthy briefs filed in the context of the present dispute demanded careful review before filing, and therefore all requested "fees for fees" should be awarded. Reply at 3-4.

I am now tasked with resolving two related issues – one large, one small. The larger issue involves determining the proper hourly rates to award to the Homer Firm attorneys responsible for this matter. That is easily resolved in Petitioner's favor. The Vaccine Act permits an award of reasonable attorneys' fees and costs to prevailing petitioners. Section 15(e). I find the reasoning of *McCulloch* persuasive as to the proper hourly rates to be applied to the work of Homer Firm attorneys, and (despite Respondent's reservation of rights and incorporation of prior arguments) see no reason to deviate from its determinations.

The second issue is whether all of the time billed to this matter should be included in the fees award. While Respondent's most recent response to the fees application does not raise any objections to the total hours requested, (*see generally* Resp.), Respondent did object in her initial response. ECF No. 35 at 17-23. I will therefore give some consideration to such objections.

As a general matter, in requesting a fees award petitioners are responsible for establishing the reasonableness of work performed by their counsel. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986) ("[i]t remains counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero.").[4]  The special master is not obligated to evaluate an attorney's billing records on a line-by-line basis in making the reasonableness determination. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993) (approving the special master's elimination of fifty percent of the hours claimed); *see also Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728–29 (2011) (affirming the

---

[4] Although *Mares* did not interpret the Vaccine Act's fees provisions, federal fee-shifting statutes are interpreted similarly. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1348 (Fed. Cir. 2008).

special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction in the number of hours from 515.3 hours to 240 hours); *Edgar v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 506 (1994) (affirming the special master's awarding only fifty-eight per cent of the numbers of hours for which compensation was sought). At bottom, as the Supreme Court instructs, when awarding attorney's fees, special masters may use estimates to achieve "rough justice." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

Respondent makes several different arguments about the reasonableness of time spent on this case. Her strongest argument is that Petitioner's counsel expended an excessive number of hours in preparing the petition and Petitioner's affidavit. As the billing records reveal, Homer Firm paralegals devoted 24.1 hours to preparing a medical record summary. *See generally*, Ex. 1 to Mot. Thereafter, attorney Joseph Pepper spent approximately 19.1 hours preparing the petition and Petitioner's affidavit from the medical record summary. *Id.*[5] Thus, between the paralegals and Mr. Pepper, 43.2 hours was devoted to the creation of the Petition.

This is a case alleging that the influenza vaccine caused GBS, a very common Vaccine Program claim that more often than not is settled in a petitioner's favor. However, the procedural history of the case was less straightforward than Respondent characterizes it to have been. Thus, subsequent to fling the medical records, several extensions were requested to accommodate settlement discussions, which went on for nearly ten months before eventually settling. The Petition successfully incorporates the subsequently filed medical records in a detailed, cohesive narrative that was arguably essential to the case's eventual settlement for $325,000. *See generally*, Pet.

Given the above, I accept Respondent's general premise that too much time was devoted to the preparation of the Petition. At the same time, however, the eight hours that Respondent proposes as reasonable for such tasks would certainly not have yielded a detailed, useful Petition, and otherwise is too severe. Initial Opp. at 21. In an attempt to strike a balance between these arguments, I hereby reduce by twenty percent the compensable time spent in preparation of the Petition. I will only compensate the paralegals for 19.3 hours preparing the petition, and Mr. Pepper for 15.3 hours, leading to a **reduction** of $1,322.20 (a reduction of 4.8 hours at $110 per hour for work completed by the paralegals, and a reduction of 3.8 hours at the rate of $209 per hour for work completed by Mr. Pepper).

Respondent next objects to billing of .5 hours to "fee-tracking" because it is "an administrative overhead function that requires no legal skill." Resp. at 19, n.26. Other special masters have, however, granted fees for fee-tracking. *See, e.g.*, *Tomlinson v. Sec'y of Health &*

---

[5] Ms. Daniels also billed time (2.8 hours) for work on the affidavit and Petition, but those hours are reduced for other reasons (discussed below).

*Human Servs.*, 2015 WL 7068558, at *4 (Fed. Cl. Spec. Mstr. Oct. 23, 2015). I am not persuaded by Respondent's argument that preparing a fees application is merely an administrative task. Initial Opp. at 19, n.26. Other special masters have previously held that billing a few hours for fees application preparation is appropriate. *See, e.g.*, *Barrett v. Sec'y of Health & Human Servs.*, No. 09-389V, 2014 WL 2505689, at *2 n.3 (Fed. Cl. Spec. Mstr. May 13, 2014); *Savin v. Sec'y of Health & Human Servs.*, No. 99-537V, 2008 WL 2066611, at *2 (Fed. Cl. Spec. Mstr. Apr. 22, 2008) (awarding four hours to Petitioner for preparation of fees and costs application).

Mr. Homer only billed .5 hours for a combined entry of drafting the final pleadings and fee-tracking combined. Ex. 1 to Mot. at 29. This does not seem unreasonable, and as such, I **do not reduce** the fees petition for Mr. Homer's fee-tracking as requested by Respondent. I also will not reduce the fees petition by the 2.5 hours spent by an unknown paralegal to prepare the fee application. These hours were billed at the reduced paralegal rate, which is appropriate. I thus **do not reduce** the Petitioner's fees application for the 2.5 hours billed by paralegals.

Respondent also argues that it is unreasonable that six attorneys, in addition to an unknown number of paralegals, worked on this relatively simple case. Initial Opp. at 18. Because Mr. Pepper handled the majority of the work, Respondent asserts that time billed by other attorneys was duplicative and unnecessary. *Id.* Other special masters have criticized the practice of having multiple attorneys on one case. *Lilley v. Sec'y of Health & Human Servs.*, No. 09-31V, 2012 WL 1836323, at *5 (Fed. Cl. Spec. Mstr. Apr. 30, 2012); *Sease v. Sec'y of Health & Human Servs.*, No. 11-228V, 2012 WL 5921066, at *10 (Fed. Cl. Spec. Mstr. Nov. 6, 2012); *Hiland v. Sec'y of Health & Human Servs.,* No. 10-491V, 2012 WL 542683, at *11 (Fed. Cl. Spec. Mstr. Jan. 31, 2012). But I have previously found (in cases dealing with Homer Firm fees applications) that staffing more than one attorney to a matter can also produce efficiencies, provided that duplication of effort is minimized. *See, e.g., Barrett,* 2014 WL 2505689, at *8-9.

It is understandable that a more senior attorney may be asked to review work performed in a case in order to answer questions or more generally increase the quality of the work product. Mr. Homer and Ms. Chin-Caplan, both of whom are named partners of the firm, (a status indicative of their seniority) billed 2.6 and .3 hours, respectively, to this matter. Such amounts are not excessive in comparison to the 49.9 hours expended by Mr. Pepper. I thereby **do not reduce** the hours billed by Mr. Homer and Ms. Chin-Caplan.

However, having multiple attorneys of comparable experience review a relatively simple case is somewhat different. For example, Petitioner requests reimbursement of 1.5 hours of time reflecting work completed by Ms. Ciampolillo. However, .5 of those hours, billed on September 21, 2013, were described as "reviewed case; discussed with J[oseph] P[epper]" and another full hour cumulatively was billed to "edit" work already completed by Joseph Pepper. Ex.1 to Mot. at 5, 17, 26-27. It is unclear why an attorney with comparable experience would need to review and

edit documents prepared by another attorney for a relatively simple case. Therefore, I hereby **reduce** the fee petition by the 1.5 hours billed by Ms. Ciampolillo (1.2 hours at the rate of $213 per hour, and .3 hours at the rate of $300 per hour) for a total deduction of $345.60. Similarly, it is unclear why Ms. Daniels and Ms. Fashano, also of comparable experience, were required to review and edit work done by Mr. Pepper. Ex. 1 to Mot. at 10, 11, 16. As a result, I also **reduce** the fee petition by the 2.9 hours billed by Ms. Daniels (2.8 hours at a rate of $213 per hour, and .1 hours at $280 per hour) resulting in a deduction of $624.40, and the .1 hours billed by Ms. Fashano (.1 hours billed at $223 per hour),  resulting in a deduction of $22.30.

Respondent further objects to the 4.8 hours billed at the paralegal rate for the ambiguous entries of "preparation," comparing this to work such as photocopying which is not normally billed to the client and could have been performed by administrative staff. Initial Opp. at 21-23. I agree with Respondent that "[i]t is unclear as to what occurs for preparation," and admonish Petitioner's counsel to be more precise and descriptive in the future. However, these entries are billed at the paralegal rate of $135.00 per hour, and I do not conclude that the overall amount of work performed in this case by paralegals was excessive. I am also not convinced by Respondent's argument that preparation necessarily can be equated with "scanning…documents." *Id.* at 22. As such, I **do not reduce** the award by this amount.

The final issue is whether to grant all time stemming from the parties' fees dispute. Although the total hours of attorney time requested (less than four) are modest in an absolute sense, I nevertheless find that some reduction is proper under the circumstances. A great deal of judicial resources was invested in resolving the Homer Firm's billing rate question this summer. Even though *McCulloch* appears to have largely resolved the fight, the dispute had a collateral effect in numerous cases, where the same types of arguments raised in *McCulloch* were repeated. The Homer Firm even felt compelled to request interim awards early in a case's life, and for relatively modest sums. *See, e.g., Caruso v. Sec'y of Health & Human Servs.,* No. 15-200, *slip op.* (Fed. Cl. Spec. Mstr. Oct. 22, 2015) (denying request for interim cost award of $2,000 for expert retainer when case was filed only six months before).

All of the above diverted the attention of the special masters from their core responsibilities of determining entitlement to awards for vaccine injuries. As serious as the dispute was to the affected attorneys, it cannot be denied as well that it produced a great deal of futile trench warfare in this and other cases that cannot be subsequently justified as the product of factual differences between cases. Therefore, in keeping with my discretion, I will reduce each attorney's time spent on litigating the fees dispute by 25 percent, and **disallow** 1.3 hours of the time in question devoted to the fees dispute, or $293.75 (.3 hours at $400 per hour for Mr. Homer, .25 hours at $290 per hour for Mr. Pepper, and .75 hours at $135 per hour for the paralegals).

I will, however, permit the Homer Firm to recover the full .5 hours ($195) of additional attorney time spent by Mr. Pepper and devoted to briefing the present issue. Reply at 4 n.4. And as explained above, I will not grant the .2 hours spent by Meredith Daniels, an attorney of comparable experience, for her review of Mr. Pepper's work product. *Id.*

Accordingly, and in light of the foregoing, Petitioner's final fees application is hereby reduced by $2,269.90. Taking into account the additional $195 incurred in briefing the present issue, an award should be made in the form of a check in the amount of $28,961.42, representing the combined sum of attorney's fees and costs[6], payable jointly to Petitioner and Petitioner's counsel, Conway, Homer & Chin-Caplan, PC. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[7]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[6] Respondent never lodged any objection to the $6,404.77 in costs requested herein, and I have not independently identified any basis for reducing or limiting them, so I therefore award them in full.

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.